ROBERT C. SCHUBERT (S.B.N. 62684)
WILLEM F. JONCKHEER (S.B.N. 178748)
NOAH M. SCHUBERT (S.B.N. 278696)
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone:     (415) 788-4220
Facsimile:      (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
nschubert@sjk.law

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG KNOWLES, MICHAEL PERSON, BRIAN ALEXANDER, JOSEPH PALMA, JON WALTON, KELLY SMITH, CHRISTOPHER STEPHENS, MATTHEW PENNER, TIMOTHY OEFELEIN, TOM KISHA, KACI ROAR, TONY ROMEO, and JOHN MATSAYKO, DAVID EISEN, WES TILLEY, ANDREW PROWANT and MARCO FERNANDEZ,  Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>v.<br><br>ARRIS INTERNATIONAL plc,<br><br>      Defendant. | **No. 5:17-cv-02740**<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

1    Upon personal knowledge as to their own acts, and based upon their investigation, their

2 counsel's investigation, and information and belief as to all other matters, Plaintiffs, on behalf

3 of themselves and all others similarly situated, allege:

4

5    **I.    INTRODUCTION**

6        1.    This is a class action brought on behalf of purchasers of the SURFboard SB6190

7 cable modem (the "Modem") sold by Defendant Arris International plc ("Arris"). A cable

8 modem is a device that allows cable subscribers to connect to broadband Internet service.

9        2.    As alleged herein, since its launch in late 2015, Arris marketed the Modem as a

10 high-end cable modem delivering "the fastest speeds and most reliable connection to the

11 Internet." However, Arris failed to disclose that the Modem contains a serious defect that

12 prevents it from operating properly. News reports and customer complaints since the release of

13 the Modem indicate that it suffers from high spikes in network latency—delays in data

14 communication over the network—that degrade users' Internet connectivity.

15       3.    Plaintiffs purchased their Modems for personal use and suffered network latency,

16 an experience shared by many purchasers of the Modem. Despite this widespread defect, Arris

17 has not announced a recall of the affected model, or otherwise offered to repair or replace it.

18       4.    By shipping Modems with this defect, Arris sold goods that were substantially

19 below the quality generally available in the market, were not fit for the for the Internet

20 connectivity for which they were generally used, and were not adequately packaged and labeled.

21 Arris also concealed the network latency problem with the Modem through its marketing,

22 advertising, and packaging of the product.

23       5.    Plaintiffs herein seek relief under the consumer protections laws of California,

24 Arizona, Louisiana, Ohio, Hawaii, Oklahoma, the District of Columbia, Kansas and Illinois.

25

26   **II.    PARTIES**

27       6.    Plaintiff Greg Knowles ("Knowles") is a citizen of California. Plaintiff Knowles

28 purchased a Modem in 2016.

1    7.    Plaintiff Michael Person ("Person") is a citizen of California. Plaintiff Person
2  purchased a Modem in 2015.

3    8.    Plaintiff Brian Alexander ("Alexander") is a citizen of California. Plaintiff
4  Alexander purchased a Modem in 2017.

5    9.    Plaintiff Joseph Palma ("Palma") is a citizen of California. Plaintiff Palma
6  purchased a Modem in 2015.

7    10.    Plaintiff Jon Walton ("Walton") is a citizen of California. Plaintiff Walton
8  purchased a Modem in or after 2015.

9    11.    Plaintiff Kelly Smith ("Smith") is a citizen of Arizona. Plaintiff Smith purchased
10  a Modem in 2017.

11    12.    Plaintiff Christopher Stephens ("Stephens") is a citizen of Arizona. Plaintiff
12  Stephens purchased a Modem in 2016.

13    13.    Plaintiff Matthew Penner ("Penner") is a citizen of Arizona. Plaintiff Penner
14  purchased a Modem in or after 2015.

15    14.    Plaintiff Timothy Oefelein ("Oefelein") is a citizen of Louisiana. Plaintiff Oefelein
16  purchased a Modem in or about 2016.

17    15.    Plaintiff Tom Kisha ("Kisha") is a citizen of Ohio. Plaintiff Kisha purchased a
18  Modem in 2017.

19    16.    Plaintiff Kaci Roar ("Roar") is a citizen of Ohio. Plaintiff Roar purchased a
20  Modem in or after 2015.

21    17.    Plaintiff Tony Romeo ("Romeo") is a citizen of Hawaii. Plaintiff Romeo
22  purchased a Modem in 2016.

23    18.    Plaintiff John Matsayko ("Matsayko") is a citizen of Oklahoma. Plaintiff
24  Matsayko purchased a Modem in 2016.

25    19.    Plaintiff David Eisen ("Eisen") is a citizen of the District of Columbia. Plaintiff
26  Eisen purchased a Modem in or after 2015.

27    20.    Plaintiff Wes Tilley ("Tilley") is a citizen of Kansas. Plaintiff Tilley purchased a
28  Modem in or after 2015.

1    21.    Plaintiff Andrew Prowant ("Prowant") is a citizen of Illinois. Plaintiff Prowant

2    purchased a Modem in 2017.

3    22.    Plaintiff Marco Fernandez ("Fernandez") is a citizen of Illinois. Plaintiff

4    Fernandez purchased a Modem in 2016.

5    23.    Defendant Arris is a corporation organized under the laws of England and Wales

6    and maintains its headquarters at 3871 Lakefield Drive, Suwanee, Georgia 30024. Defendant

7    Arris is a citizen of Georgia. In its public statements, Arris describes itself as a "world leader in

8    entertainment and communications technology" and states that it provides "hardware, software,

9    and services across the cloud, network, and home to power TV and Internet for millions of people

10   around the globe." Arris operates two business segments: Customer Premises Equipment and

11   Network & Cloud. Arris provides equipment and technology, including cable modems, that is

12   used by service providers to deliver media, voice, and data services to their subscribers.

13

14   **III.    JURISDICTION AND VENUE**

15   24.    This Court has subject matter jurisdiction over this action pursuant to the Class

16   Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because there are more than 100 proposed

17   Class Members, some members of the proposed class and the Defendant are citizens of different

18   states, and the amount in controversy exceeds $5 million.

19   25.    This Court has personal jurisdiction over Defendant because Defendant has

20   sufficient minimum contacts with California such that the exercise of jurisdiction by this Court

21   over Defendant is consistent with notions of fair play and substantial justice. A substantial portion

22   of the wrongdoing alleged in this Complaint took place in California; Defendant conducts

23   business in California and otherwise avails itself of the protections and benefits of California law

24   through the promotion, marketing, and sale of its Modems in the State; and this action arises out

25   of or relates to these contacts.

26   26.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant

27   maintains an office in this District, a substantial part of the events or omissions giving rise to the

28

claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

27.     Intradistrict Assignment: Pursuant to Civil L.R. 3-2(c) and 3-5(b), assignment to the San Jose Division of the Northern District of California is proper, because a substantial part of the events or omissions which give rise to the claim occurred in this Division or a substantial part of the property subject to the action is situated in this Division. Defendant is headquartered in this Division and engaged in the extensive promotion, marketing, distribution, and sales of the products at issue in this Division.

28.

## IV.     SUBSTANTIVE ALLEGATIONS

### A.     The Cable Modem Market.

29.     A cable modem is a device that enables a computer to transmit data over a coaxial cable line. The cable modem is located at the cable subscriber's home, and connects to the cable network to receive and transmit digital information between subscriber-owned devices (such as desktop PCs or routers) and the service provider's headend or central office, providing Internet connectivity for data and/or voice services.

30.     Cable subscribers generally obtain their cable modem for Internet connectivity in one of two ways – they either rent a cable modem that is owned by their cable service provider (for example, Comcast), or they purchase the cable modem at retail. Arris is one of several manufacturers of cable modem hardware and related equipment for service providers and consumers. Other large competitors include Cisco Systems, Inc. and Netgear, Inc.

31.     As of 2016, the cable subscriber base in the United States was approximately 50 million. Due to the size of the cable subscriber base, the market for cable modems is very large. According to Arris's public statements, the markets in which it participates are "dynamic, highly competitive and require companies to react quickly and capitalize on change."

32.     Cable modem capability is measured by a telecommunications standard named Data Over Cable Service Interface Specification ("DOCSIS"). DOCSIS is administered by Cable

Television Laboratories, Inc., known as CableLabs, a not-for-profit research and development consortium composed of industry participants. DOCSIS provides cable modem manufacturers and service providers a common method for products to work together in a predictable manner. DOCSIS has evolved over time to support new capabilities, including higher Internet speeds. The cable modems at issue in this case used the DOCSIS 3.0 standard.

33.     Cable modems may be differentiated based on the "bits per second" or "bps" they can process. A "bit" is a basic unit of information in computing and digital communications. The term "Gbps" is a measurement in billions of bits per second, "Mbps" is a measurement in millions of bits per second, and "Kbps" is a measurement in thousands of bits per second. Generally speaking, larger bps units denote higher data speed capability. Similarly, cable modems are equipped with "upload" and "download" channels for data. The more channels a cable modem has, the more bps the it can handle, improving capability.

**B. Arris Markets the Modem as "Delivering the Fastest Speeds" and the "Most Reliable" Connection to the Internet.**

34.     On its website, Arris describes its SURFboard line of cable modems as follows:

> The Internet brings us together. It lets us experience the wealth of our global community with friends, family, and the entire world. If you want an unmatched Internet experience, look no further than ARRIS SURFboard modems. We're the industry standard and the world's standard—with over 175 million ARRIS modems sold.

> ARRIS continuously evolves the SURFboard product line to deliver the fastest download speeds available.

> When you choose an ARRIS SURFboard, you're joining a 60-year legacy of innovation from the company that invented digital TV and brought wireless Internet into the home with the first cable modem gateway. The same company that the world's leading service providers choose to connect millions of people around the world to the Internet.

35.     During the Class Period, Arris prominently marketed and advertised the Modem based on its purported speed and reliability. For example, on its website and on the Amazon e-commerce platform, Arris included the following representation:

> Introducing the first Gigabit+ Cable Modem available in retail. The SURFboard SB6190 is a DOCSIS 3.0 modem [and] is capable of download speeds up to 1.4 Gbps! That's fast enough to download multiple HD movies in one minute! Power your home network with the SB6190 to deliver the fastest speeds and most reliable connection to the Internet. Own yours today and stop paying rental.

36. In addition, on its website, Arris touted the Modem as "the First Gigabit Cable Modem" able to achieve "download speeds up to 1.4 Gbps." Arris further touted the Modem as a "DOCSIS 3.0 Cable Modem" with "32 download an 8 upload channels." Arris stated that the Modem supported the Internet Protocols "IPv4 and IPv6 – the latest Internet standard."

37. The packaging for the Modem repeated these claims and representations: (a) "32 Downstream Channels, Speeds up to 1.4 Gbps"; (b) "DOCSIS 3.0 Cable Modem"; (c) "32 Download and 8 Upload Channels"; and (d) "Get what you pay for – supports gigabit service tiers." The packaging further contains the statement "First Gigabit+ Cable Modem" and is emblazoned with a seal stating "over 135 million sold" and "#1 selling modem."

**C. High Network Latency Results in Connection Delays and Prevents Cable Modems from Utilizing their Maximum Advertised Bandwidth.**

38. In the context of computer networking, network latency refers to delays that occur in data communication over a network. Internet connections with low latency experience only small delay times, while Internet connections with high latency suffer from long delays.

39. Although network speed is frequently only discussed in terms of bandwidth—the data rate supported by a network interface (e.g., 1.4 Gbps)—network latency matters equally to the end user's ability to make use of a device's advertised speeds. Excessive latency creates bottlenecks that prevent data from filling the network pipe, thus decreasing the effective throughput and limiting the maximum effective bandwidth of the connection.

40. Network latency is measured in milliseconds ("ms"), where the number of milliseconds represents the amount of time each packet of data is delayed by. Smaller numbers indicate smaller delays, and larger numbers indicate substantial delays in the connection and a potential problem with the network device.

41.     For a cable modem, typical network latency between a computer and the cable modem ranges from approximately 5ms to 40ms. Latency above this range results in connection delays and prevents a cable modem from utilizing its maximum advertised bandwidth.

**D. Reports Surface that the Modem Suffers "Severe Latency Spikes."**

42.     In late 2016, reports surfaced regarding network latency experienced by Modem users. These reports attributed the problem to the Puma 6 Chipset made by Intel Corporation, which is a component of the Modem. According to an article on *DSLreports* dated November 29, 2016 entitled "The Arris SB6190 Modem & Puma 6 Chipset Have Some Major Issues":

> An electrical engineer and Cox broadband subscriber in our forums recently purchased the Arris SB6190, thinking it would be a notable upgrade from the Arris SB6183 and prepare him for the likely future launch of Cox gigabit broadband service in Arizona. The device, which features the Intel Puma 6 chipset, supports 32 x 8 channel bonding and is supposed to be relatively cutting edge -- at least among DOCSIS 3.0 devices.

> Unfortunately for xymox1 [the user], he discovered that this supposed upgrade is in fact a downgrade; one that results in notable connectivity issues and consistently severe latency spikes.

> The user, who has been charting home network performance for the better part of eight years, documented . . . just how well this new device performs. As in: it doesn't.

> "The problem is extreme and, frankly, horrific," notes the user. "Arris and Intel Puma6/MaxLinear traded off speed for latency thinking no one would notice. They tossed latency out the window to get 32 bonded channels of speed. They tossed users under the bus as no user is really gonna use 1 Gbps, but they will feel the latency and latency jitter in DNS [domain name system] lookups."

> In fact, the new modem appears to have doubled his latency before the first packet even leaves his house. The user contacted Cox, but even after ensuring the modem was running the latest firmware the problem persisted.

> Curious as to why this problem exists at all, the user opened the device and discovered that Arris appears to have replaced the Broadcom chipset common to the more recent Surfboard modems, with an Intel Puma 6

chipset. There appear to have been more than a few complaints about this particular chipset floating around the internet across North America, most of them regarding the same severe latency and jitter issues xymox1 has so carefully documented. Curiously, only some reviewers appear to have even noticed the device's performance issues.

It's unclear why such a problem wasn't caught earlier by CableLabs during product certification. Whatever the cause, posts to our forum appear to indicate that Arris is aware of the problem and currently working on a firmware update. When that updated firmware will arrive in the wild isn't clear.

43. Arris acknowledged the latency problem with the Modems discussed in the November 29, 2016 article. A follow-up article in *DSLreports* dated December 1, 2016 entitled "Arris tells us it's working with Intel on SB6190, Puma 6 Problems" reported as follows:

Arris tells DSLreports the company is working closely with Intel on a problem in their SB6190 modem (more specifically the Intel Puma 6 Chipset) that causes owners to suffer significant jitter and latency on their connections. As we noted earlier this week the problem results in users seeing significant (250ms+) latency spikes and troubling DNS lookup delays when browsing the internet or gaming. The problem was examined in great detail in our forums by DSLreports regular xymox1.

Arris' statement makes it clear that Intel's Puma 6 chipset does appear to be the culprit in the jitter and latency problem.

"ARRIS has been working actively with Intel to address the issue, which resulted in some SURFboard SB6190 users reporting latency while running high-performance apps," a company spokesperson tells me.

"Intel is providing a firmware fix to correct the condition, and we will issue it as soon as it is available," the company added. "We remain committed to providing the best broadband experience for all users of ARRIS devices and regret any inconvenience this issue caused."

Granted the Puma 6 chipset isn't just embedded in the Arris SB6190, but a wide variety of modems from an assortment of different vendors. Our forums are filled with complaints from users on various ISPs all with one thing in common: they're using a modem with the Intel Puma 6 chipset as its CPU. For example users in our Cox forum note the same problem is impacting users that bought the Netgear CM700 cable modem as well.

How this large of a problem escaped multiple vendors and CableLabs for so long remains unclear. In a statement to DSLreports, CableLabs

indicated that the performance issues inherent in the Puma 6 chipset effectively falls outside of its jurisdiction.

"Products submitted for CableLabs certification are tested for compliance with the DOCSIS specifications, which define the interface requirements that allow devices from different manufacturers to interoperate with each other," the organization said. "The specifications specifically do not address performance requirements, so that manufacturers can differentiate their products through performance and additional features. As a result, CableLabs certification does not include performance testing."

44.     In a December 3, 2016 article posted to *The Register* entitled "Why Your Gigabit Broadband Lags Like Hell – Blame Intel's Chipset," the Modem's network latency problem was further discussed. The article stated in part:

Modems powered by Intel's Puma 6 chipset that suffer from bursts of game-killing latency include the Arris Surfboard SB6190, the Hitron CGNV4, and the Compal CH7465-LG, and Puma 6-based modems rebadged by ISPs, such as Virgin Media's Hub 3 and Comcast's top-end Xfinity boxes. There are other brands, such as Linksys and Cisco, that use the system-on-chip that may also be affected.

The surges in lag are experienced by subscribers on various big ISPs, from Comcast, Charter and Cox in the US to Rogers in Canada and Virgin Media in the UK. You don't need a full 1Gbps connection to trigger the latency spikes – just at least a super-fast package and a buggy modem.

45.     The *Register* article reproduced a graph created by "xymox1," the same Modem user quoted in the November 29, 2016 *DSLreports* article, which demonstrated the Modem's latency spikes:



46.     By contrast, a similar cable modem, also manufactured by Arris but using a Broadcom chipset, the SB6183, exhibited no similar latency issues in the test:



47.     The *Register* article quoted "xymox1" as follows:

"I excitedly swapped out my Arris SB1683 Broadcom modem for the new SB6190 Intel one expecting gigabit performance and immediately noticed slower webpage loads," he told *The Register*. "During first-person gaming, I was getting killed way more often for no apparent reason. I looked at an eight-year graph of latency from my home logs, and was horrified. Swapping back to my SB6183 solved all the issues."

48.     Finally, the *Register* article stated that Arris was aware of and acknowledged the network latency problems suffered by Modem users:

"Arris has been working actively with Intel to address the issue, which resulted in some SURFboard SB6190 users reporting latency concerns," a spokeswoman for Arris said.

"We plan to quickly issue Intel's firmware updates to resolve any latency. We remain committed to providing the best broadband experience for all users of Arris devices and regret any inconvenience this issue caused."

49.     Notwithstanding Arris's awareness and acknowledgement of the Modem's network latency problems and customer complaints, Arris continues to fail to disclose the defect in its marketing of the Modem, and continues to refuse to repair or replace the Modems.

**E.  Plaintiffs Experience Network Latency Caused by the Modem.**

50.     Plaintiffs each purchased a Modem for personal use, which they used to connect their devices to the Internet.

51.     Plaintiffs' Modems were new and in their original packaging when they each received their Modems.

52.     Plaintiff Knowles purchased a Modem in 2016. Plaintiff Knowles experienced Internet connectivity issues, including fluctuation in Internet speed.

53.     Plaintiff Person purchased a Modem in 2015. Plaintiff Person is a gamer and experienced high network latency when gaming and web browsing. Plaintiff Person contacted Arris when he encountered network latency issues. At first, Arris claimed there was no problem and then later blamed the Internet service provider and claimed there would be a firmware update.

54.     Plaintiff Alexander purchased a Modem in 2017. Plaintiff Alexander experienced high network latency issues and packet errors.

55.     Plaintif Palma purchased a Modem in 2015. Plaintiff Palma experienced intermittent packet loss and network latency.

56.     Plaintiff Walton purchased a Modem in or after 2015. Plaintiff Walton experienced slow Internet connection and packet loss.

57.     Plaintiff Smith purchased a Modem in 2017. Plaintiff Smith experienced intermittent packet loss.

58.     Plaintiff Stephens purchased a Modem in 2016. Plaintiff Stephens noticed high network latency while gaming.

59.     Plaintiff Penner purchased a Modem in or after 2015. Plaintiff Penner experienced slow Internet connection and needs to reboot his Modem multiple times per day.

60.     Plaintiff Oefelein purchased a Modem in or about 2016. Plaintiff Oefelein experienced high network latency and recurring failures to maintain Internet connection. When Plaintiff Oefelein reported the issues to Arris, Arris would blame the Internet service provider. Arris provided Plaintiff Oefelein with a replacement Modem, which had the exact same problems as the original.

61.     Plaintiff Kisha purchased a Modem in 2017. Plaintiff Kisha experienced occasional packet loss and problems using Virtual Private Network (VPN) services.

62.     Plaintiff Roar purchased a Modem in or after 2015. Plaintiff Roar experienced Internet connection cutting in and out and would frequently need to restart the Modem. Plaintiff Roar is a gamer and experienced poor Internet performance.

63.     Plaintiff Romeo purchased a Modem in 2016. Plaintiff Romeo experienced constant network latency issues.

64.     Plaintiff Matsayko purchased a Modem in 2016. Plaintiff Matsayko experienced slow Internet connection speeds and dropped Internet connections.

65.     Plaintiff Eisen purchased a Modem in or after 2015. Plaintiff Eisen experienced random high network latency while gaming.

66.     Plaintiff Tilley purchased a Modem in or after 2015. Plaintiff Tilley experienced constant network latency issues.

67.     Plaintiff Prowant purchased a Modem in 2017. Plaintiff Prowant experienced interrupted network service, random high network latency and sluggishness.

68.     Plaintiff Fernandez purchased a Modem in 2016. Plaintiff Fernandez experienced massive lateny spikes which interfere with his gaming.

69.     Plaintiffs relied on the statements that Arris made about the Modem, and based on those statements, believed that the Modem was a reliable cable modem that would perform as represented, including that it provided the "fastest speeds" and the "most reliable connection" to the Internet. Plaintiffs did not know that the Modem suffered from abnormally high network latency and unreliable Internet connectivity.

70.     As alleged herein, since their purchases of the Modem, Plaintiffs have repeatedly suffered abnormally high network latency and unreliable Internet connectivity, and continue to do so. Had Plaintiffs known that the Modem was defective, they would not have purchased the Modem.

## V.     CLASS ACTION ALLEGATIONS

71.     Plaintiffs brings this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and proposed Classes defined as follows:

> All persons in the State of California who purchased an Arris SB6190 Cable Modem (the "California Class").
>
> All persons in the State of Arizona who purchased an Arris SB6190 Cable Modem (the "Arizona Class").
>
> All persons in the state of Louisiana who purchased an Arris SB6190 Cable Modem (the "Louisiana Class").
>
> All persons in the state of Ohio who purchased an Arris SB6190 Cable Modem (the "Ohio Class").
>
> All persons in the state of Hawaii who purchased an Arris SB6190 Cable Modem (the "Hawaii Class").
>
> All persons in the state of Oklahoma who purchased an Arris SB6190 Cable Modem (the "Oklahoma Class").

All persons in the District of Columbia who purchased an Arris SB6190 Cable Modem (the "D.C. Class").

All persons in the state of Kansas who purchased an Arris SB6190 Cable Modem (the "Kansas Class").

All persons in the state of Illinois who purchased an Arris SB6190 Cable Modem (the "Illinois Class").

72.     Within the California Class, there is one subclass for purposes of Plaintiffs' claims under the Song-Beverly Consumer Warranty Act and the Consumer Legal Remedies Act (the "Subclass"). The proposed Subclass is defined as follows:

All persons in the State of California who purchased an Arris SB6190 Cable Modem for personal, family or household purposes.

73.     Excluded from the Classes are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, coconspirators, successors, subsidiaries, and assigns. Also excluded from the Classes are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

74.     This action is brought and may be properly maintained as a class action pursuant to Rule 23. This action satisfies the requirements of Rule 23, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

75.     *Numerosity.* The Classes and Subclass are so numerous that the individual joinder of all members is impracticable. While the Classes's and Subclass's exact number are currently unknown and can only be ascertained through appropriate discovery, Plaintiffs, on information and belief, allege that the Classes and Subclass include at least thousands of persons.

76.     *Commonality.* Common legal and factual questions exist that predominate over any questions affecting only individual Class or Subclass Members. These common questions, which do not vary among Class Members and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

a. Whether the Modem contains a defect that causes abnormally high network latency;

b. Whether the Modem is of the same quality as those generally acceptable in the market;

c. Whether the Modem is fit for the ordinary purposes for which the goods are used;

d. Whether the Modem was adequately contained, packaged, and labeled;

e. Whether Arris breached its implied warranty of merchantability;

f. Whether Arris represented that the Modem has characteristics, uses, or benefits that it does not have;

g. Whether Arris represented that the Modem is of a particular standard, quality, or grade when it is of another;

h. Whether Arris's representations and omissions regarding the Modem were false and misleading and constitute false advertising;

i. Whether Arris engaged in unlawful, fraudulent, or unfair business practices;

j. Whether Plaintiffs and the Class have been damaged by the wrongs alleged and are entitled to compensatory or punitive damages;

k. Whether Plaintiffs and the Class are entitled to injunctive or other equitable relief, including restitution.

77. Each of these common questions is also susceptible to a common answer that is capable of classwide resolution and will resolve an issue central to the validity of the claims.

78. ***Adequacy of Representation.*** Plaintiffs are adequate Class and Subclass representatives because they are Class and Subclass Members, and their interests do not conflict with the Classes's or Subclass's interests. Plaintiffs retained counsel who are competent and experienced in consumer-protection class actions. Plaintiffs and their counsel intend to prosecute

1  this action vigorously for the Classes's and Subclass's benefit and will fairly and adequately

2  protect their interests.

3      79.    ***Predominance and Superiority.*** The Classes and Subclass can be properly

4  maintained because the above common questions of law and fact predominate over any questions

5  affecting individual Class or Subclass Members. A class action is also superior to other available

6  methods for the fair and efficient adjudication of this litigation because individual litigation of

7  each Class and Subclass Member's claim is impracticable. Even if each Class Member could

8  afford individual litigation, the court system could not. It would be unduly burdensome

9  if thousands of individual cases proceed. Individual litigation also presents the potential

10 for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk

11 of an inequitable allocation of recovery among those with equally meritorious claims. Individual

12 litigation would increase the expense and delay to all parties and the courts because it requires

13 individual resolution of common legal and factual questions. By contrast, the class-action device

14 presents far fewer management difficulties and provides the benefit of a single adjudication,

15 economies of scale, and comprehensive supervision by a single court.

16

17 **VI.    CLAIMS FOR RELIEF**

18 **First Claim for Relief**

19 **Violation of California Song-Beverly Consumer Warranty Act,**

20 **Cal. Civ. Code §§ 1790 *et seq.***

21     80.    Plaintiffs Knowles, Person, Alexander, Palma and Walton individually and on

22 behalf of the Subclass, incorporate by reference all of the allegations contained in the preceding

23 paragraphs of this Complaint.

24     81.    Plaintiffs Knowles, Person, Alexander, Palma and Walton bring this claim

25 individually and on behalf of the Subclass against Defendant.

26     82.    Plaintiffs and the Subclass purchased the SB6190 Modem manufactured by

27 Defendant that was marketed for fast and reliable Internet connectivity.

28

83.     Plaintiffs and the Subclass purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

84.     At the time of purchase, Defendant was in the business of manufacturing and selling cable modems, including the SB6190 Modem.

85.     The SB6190 Modems were used and bought primarily for personal, family, or household purposes and are therefore consumer goods.

86.     Arris's SB6190 Modem contained a defect that causes severe network latency. This defect was present in Arris's SB6190 Modems when they left the exclusive control of Defendant and therefore existed during the duration of the warranty period.

87.     Arris's SB6190 Modems were not of the same quality as those generally acceptable in the trade; were not fit for the ordinary purposes of fast and reliable Internet connectivity for which the goods are used; were not adequately contained, packaged, and labeled; and did not conform to the promises and facts stated on the container and label.

88.     Defendant, therefore, breached the implied warranty of merchantability, which by law is provided in every consumer agreement for the sale of goods, including for the sale of Arris's SB6190 Modem.

89.     As a direct and proximate cause of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the Subclass have been damaged by receiving an inferior product from that which they were promised. Plaintiffs and the Subclass, therefore, have the right to cancel and recover the purchase price of their SB6190 Modem.

**Second Claim for Relief**

**Violation of California Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750 *et seq.***

90.     Plaintiffs Knowles, Person, Alexander, Palma and Walton individually and on behalf of the Subclass, incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint.

91. Plaintiffs Knowles, Person, Alexander Palma and Walton bring this claim individually and on behalf of the Subclass against Defendant.

92. Defendant is a "person" as defined in CAL. CIV. CODE § 1761(c).

93. Plaintiffs and the Subclass acquired and purchased the SB6190 Modem for personal, family, or household purposes and are therefore "consumers" as defined in CAL. CIV. CODE § 1761(d).

94. The SB6190 Modems that Plaintiffs and the Subclass purchased from Defendant are "goods" as defined by CAL. CIV. CODE § 1761(a).

95. The purchases by Plaintiffs and the Subclass of the goods sold by Defendant constitute "transactions" as defined by CAL. CIV. CODE §§ 1761(e) and 1770.

96. In connection with its sale of goods to Plaintiffs and the Subclass, Defendant violated the CLRA by:

    a. Misrepresenting to Plaintiffs and the Subclass that the SB6190 Modems were reliable cable modems, when in fact, they have a defect that causes severe network latency, in violation of CAL. CIV. CODE §§ 1770(a)(5), (7), (9), and (16);

    b. Misrepresenting to Plaintiffs and the Subclass that Defendant's goods had characteristics, uses, and benefits that they did not have, in violation of CAL. CIV. CODE § 1770(a)(5);

    c. Representing to Plaintiffs and the Subclass that Defendant's goods were of a particular standard, quality, or grade, when they were of another in violation of CAL. CIV. CODE § 1770(a)(7);

    d. Advertising goods to Plaintiffs and the Subclass with the intent not to sell them as advertised, in violation of CAL. CIV. CODE § 1770(a)(9); and

    e. Misrepresenting to Plaintiffs and the Subclass that the subject of a transaction has been supplied in accordance with a previous representation when it had not, in violation of CAL. CIV. CODE § 1770(a)(16).

97. In addition, under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant

has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

98.     Defendant had a duty to disclose to Plaintiffs and the Subclass that the SB6190 Modem contains a defect that causes it to fail for the following three independent reasons: (a) Defendant had exclusive knowledge of the information at the time of sale; (b) Defendant actively concealed from Plaintiffs and the Subclass this defect, which causes substantial Internet connectivity failures and is important to customers; and (c) Defendant made partial representations to Plaintiffs and the Subclass regarding the speed and reliability of the Modem.

99.     Defendant violated the CLRA by supplying defective Modems and by further concealing this defect from Plaintiffs and the Subclass.

100.    Defendant's misrepresentations and omissions in violation of the CLRA were likely to mislead an ordinary consumer. Plaintiffs and the Subclass reasonably understood Defendant's representations and omissions to mean that the SB6190 Modems were reliable for typical consumer use and did not contain a defect that would hamper their performance.

101.    Defendant's misrepresentations and omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

102.    Plaintiffs and the Subclass relied to their detriment on Defendant's misrepresentations and omissions in purchasing the Modems.

103.    Plaintiffs, on behalf of themselves and the Subclass, demand judgment against Defendant under the CLRA for injunctive relief.

104.    Plaintiffs, on behalf of themselves and the Subclass, further intend to seek compensatory and punitive damages. Pursuant to CAL. CIV. CODE § 1782(a), Plaintiffs will serve Defendant with notice of its alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendant fails to provide appropriate relief for its violations of the CLRA, Plaintiffs will amend this Complaint to seek monetary damages.

105.    Notwithstanding any other statements in this Complaint, Plaintiffs do not seek monetary damages in conjunction with their CLRA claim—and will not do so—until this thirty-day period has passed.

### Third Claim for Relief

### Violation of California False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

106.    Plaintiffs Knowles, Person, Alexander, Palma and Walton individually and on behalf of the California Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint.

107.    Plaintiffs Knowles, Person, Alexander, Palma and Walton bring this claim individually and on behalf of the California Class against Defendant.

108.    Defendant engaged in advertising and marketing to the public and offered for sale the SB6190 Modem.

109.    Defendant engaged in the advertising and marketing alleged herein with the intent to induce the sale of the Modems to consumers like Plaintiffs.

110.    Defendant's advertising and marketing representations regarding its SB6190 Modems were false, misleading, and deceptive as set forth in detail above. Defendant also concealed the material information from consumers that these cable modems contained a defect that causes severe network latency and unreliable Internet connectivity.

111.    Defendant's misrepresentations and omissions alleged herein deceive or have the tendency to deceive the general public regarding the reliability of its SB6190 Modems for ordinary consumer use.

112.    Defendant's misrepresentations and omissions alleged herein were the type of misrepresentations that are material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

113.    Defendant's misrepresentations and omissions alleged herein are objectively material to a reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

114.    At the time Defendant made the misrepresentations and omissions alleged herein, Defendant knew or should have known that they were untrue or misleading and acted in violation of CAL. BUS. & PROF. CODE §§ 17500 *et seq.*

115.    Unless restrained by this Court, Defendant will continue to engage in untrue and misleading advertising in violation of CAL. BUS. & PROF CODE §§ 17500 *et seq.*

116.    As a result, Plaintiffs and each member of the California Class have been injured, have lost money or property, and are entitled to relief. Plaintiffs and the California Class seek restitution, injunctive relief, and all other relief permitted under CAL. BUS. & PROF. CODE §§ 17500 *et seq.*

## Fourth Claim for Relief
## Violation of California Unfair Competition Law,
## Cal. Bus. & Prof. §§ 17200 *et seq.*

117.    Plaintiffs Knowles, Person, Alexander, Palma and Walton individually and on behalf of the California Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint.

118.    Plaintiffs Knowles, Person, Alexander, Palma and Walton bring this claim individually and on behalf of the California Class against Defendant.

119.    Plaintiffs have standing to pursue this claim because they have suffered injury in fact and have lost money or property as a result of Defendant's actions as described *supra*. All Class Members overpaid for the SB6190 Modem due to Defendant's concealment of a defect with the SB6190 Modem.

120.    Defendant's actions as alleged herein constitute an "unlawful" practice as encompassed by CAL. BUS. & PROF. CODE §§ 17200 *et seq.* because Defendant breached the implied warranty of merchantability in violation of the California Song-Beverly Consumer

Warranty Act, CAL. CIV. CODE §§ 1790 *et seq.* and further violated the CLRA, CAL. CIV. CODE §§ 1750 *et seq.* and the FAL, CAL. BUS. & PROF. CODE §§ 17500 *et seq.*

121.    Defendant's actions as alleged herein constitute a "fraudulent" practice because, by representing that the SB6190 Modems were reliable for ordinary consumer use but concealing that the cable modems actually contained a defect, Defendant's conduct was likely to deceive consumers. Defendant's failure to disclose this defect, especially in light of its claims about speed and reliability, constitute a material omission in violation of the UCL.

122.    Defendant's actions as alleged in this Complaint constitute an "unfair" practice, because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Arris's customers. The harm caused by Arris's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Plaintiffs and the California Class. Arris could and should have chosen one of many reasonably available alternatives, including not selling cable modems that contained a defect, disclosing the defect to prospective purchasers, and/or not representing that its cable modems were suitable for consumer use. Additionally, Defendant's conduct was "unfair," because it violated the legislatively declared policies reflected by California's strong consumer protection, consumer warranty, and false advertising laws, including the California Song-Beverly Consumer Warranty Act, CAL. CIV. CODE §§ 1790 *et seq.*, the CLRA, CAL. CIV. CODE §§ 1750 *et seq.*, and the FAL, CAL. BUS. & PROF. CODE §§ 17500 *et seq.*

123.    As a result of Defendant's unlawful, fraudulent, and unfair conduct, Plaintiffs and the California Class were damaged. Plaintiffs and the California Class received an inferior product from that which they were promised. Had Defendant disclosed the defect with the SB6190 Modems, Plaintiffs and the California Class would not have purchased the cable modems or would have paid substantially less.

124.    Defendant's wrongful business practices constitute a continuing course of unfair competition because it continues to represent that the SB6190 is reliable, continues to fail to disclose the defect, and continues to refuse to repair or replace the modems. Plaintiffs and the

California Class, therefore, seek equitable relief to remedy Arris's deceptive marketing, advertising, and packaging and to recall all affected cable modems.

125. Plaintiffs and the California Class also seek an order requiring Defendant to make full restitution of all monies they have wrongfully obtained from Class Members, as well as all other relief permitted under CAL. BUS. & PROF. CODE §§ 17200 *et seq.*

**Fifth Claim for Relief**

**Violation of Arizona Consumer Fraud Act,**

**Ariz. Rev. Stat § 44-1521 *et seq.***

126. Plaintiffs Smith, Stephens and Penner, individually and on behalf of the Arizona Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint.

127. Plaintiffs Smith, Stephens and Penner bring this claim individually and on behalf of the Arizona Class against Defendant.

128. Plaintiffs and the Arizona Class purchased the SB6190 Modem manufactured by Defendant that was marketed for fast and reliable Internet connectivity.

129. Plaintiffs and the Arizona Class purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

130. Arris and Plaintiffs are "persons" within the meaning of the Arizona Consumer Fraud Act ("CFA"), ARIZ. REV. STAT. § 44-1521(6). The Modems are "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

131. The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, ... misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale ... of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A).

132.    Arris's actions occurred in the conduct of trade or commerce. In the course of its business, Arris concealed the defects in the Modems and otherwise engaged in activities with a tendency or capacity to deceive. Arris also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Modems. The suppressed or omitted information would be material to a reasonable consumer.

133.    Arris knew about the Modems's defects. Arris acquired additional information concerning the defects after the Modems were sold, but concealed all of that information until it was revealed by Modem purchasers. By failing to disclose and by actively concealing the defects in the Modems, Arris engaged in unfair and deceptive business practices in violation of the Arizona CFA.

134.    Arris's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs Smith, Stephens and Penner, about the true reliability of their Modems. Arris intentionally and knowingly misrepresented material facts regarding the defective Modems with the intent to mislead Plaintiffs Smith, Stephens and Penner.

135.    Arris knew or should have known that its conduct violated the Arizona CFA. As alleged above, Arris made material statements about the reliability of the Modems that were either false or misleading.

136.    Arris owed Plaintiffs a duty to disclose the true reliability of the Modems because Arris: (a) possessed exclusive knowledge about the defects in the Modems; (b) intentionally concealed the foregoing from Plaintiffs; and (c) made incomplete representations about the reliability of the Modems, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

137.    Because Arris fraudulently concealed the defects in the Modems, purchasers of the Modem were deprived of the benefit of their bargain since the cable modems they purchased were worth less than they would have been if they were free from defects. Furthermore, Plaintiffs and the Arizona Class had to spend their time and/or money to resolve their problems with the

Modems. Had purchasers of the Modem been aware of the defects in their cable modems, they would have either not have bought the Modems or would have paid less for them.

138. As a direct and proximate result of Arris's violations of the Arizona CFA, Plaintiffs have suffered injury-in-fact and/or actual damage. Plaintiffs seek monetary relief against Arris in an amount to be determined at trial. Plaintiffs also seek an order enjoining Arris unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**Sixth Claim for Relief**

**Violation of the Louisiana Unfair Trade Practices**

**and Consumer Protection Law**

**La. Rev. Stat. § 51.1401 *et seq.***

139. Plaintiff Oefelein, individually and on behalf of the Louisiana Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

140. Plaintiff Oefelein brings this claim individually and on behalf of the Louisiana Class against Defendant.

141. Plaintiff and the Louisiana Class purchased the SB6190 Modem manufactured by Defendant that was marketed for fast and reliable Internet connectivity.

142. Plaintiff and the Louisiana Class purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

143. Arris and Plaintiff and the Louisiana Class are "persons" within the meaning of the LA. REV. STAT. § 51:1402(8). Plaintiff and the Louisiana Class are "consumers" within the meaning of LA. REV. STAT. § 51:1402(1). Arris engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. § 51:1402(9).

144. The Louisiana Unfair Trade Practices and Consumer Protection Law ("CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A). Arris participated in misleading, false, or deceptive acts that violated the Louisiana CPL. By systematically concealing the defects in Modems, Arris engaged in deceptive

business practices prohibited by the Louisiana CPL. The suppressed or omitted information would be material to a reasonable consumer.

145. In the course of its business, Arris concealed the defects in the Modems and otherwise engaged in activities with a tendency or capacity to deceive. Arris also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Modems.

146. Arris knew about the Modems's defects. Arris acquired additional information concerning the defects after the Modems were sold, but concealed all of that information until it was revealed by Modem purchasers. By failing to disclose and by actively concealing the defects in the Modems, Arris engaged in unfair and deceptive business practices in violation of the Louisiana CPL.

147. Arris's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true reliability of their Modems.

148. Arris intentionally and knowingly misrepresented material facts regarding the Modems with the intent to mislead Plaintiff and the Louisiana Class.

149. Arris knew or should have known that its conduct violated the Louisiana CPL.

150. As alleged above, Arris made material statements about the reliability of the Modems that were either false or misleading. Arris owed Plaintiff a duty to disclose the true reliability of the Modems because Arris: (a) possessed exclusive knowledge about the defects in the Modems; (b) intentionally concealed the foregoing from Plaintiff; and (c) made incomplete representations about the reliability of the Modems, while purposefully withholding material facts from Plaintiff that contradicted these representations.

151. Because Arris fraudulently concealed the defects in the Modems, purchasers of the Modems were deprived of the benefit of their bargain since the cable modems they purchased were worth less than they would have been if they were free from defects. Furthermore, Plaintiff and the Louisiana Class had to spend their time and/or money to resolve their problems with the

Modems. Had purchasers of the Modem been aware of the defects in their cable modems, they would have either not have bought the Modems or would have paid less for them.

152.     As a direct and proximate result of Arris's violations of the Louisiana CPL, Plaintiff and the Louisiana Class have suffered injury-in-fact and/or actual damage. Pursuant to LA. REV. STAT. § 51:1409, Plaintiff seeks to recover actual damages in an amount to be determined at trial; treble damages for Arris's knowing violations of the Louisiana CPL; an order enjoining Arris's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. § 51:1409.

**Seventh Claim for Relief**

**Violation of the Ohio Consumer Sales Practice Act**

**Ohio Rev. Code Ann. § 1345.01 *et seq.***

153.     Plaintiffs Kisha and Roar, individually and on behalf of the Ohio Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint.

154.     Plaintiffs Kisha and Roar bring this claim individually and on behalf of the Ohio Class against Defendant.

155.     Plaintiffs and the Ohio Class purchased the SB6190 Modem manufactured by Defendant that was marketed for fast and reliable Internet connectivity.

156.     Plaintiffs and the Ohio Class purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

157.     Arris is a "supplier" as that term is defined in OHIO REV. CODE § 1345.01(C). Plaintiffs and the Ohio Class are "consumers" as that term is defined in OHIO REV. CODE § 1345.01(D), and their purchases of Modems are "consumer transactions" within the meaning of OHIO REV. CODE § 1345.01(A).

158.     The Ohio Consumer Sales Practices Act ("CSPA"), OHIO REV. CODE §1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation, the Act prohibits suppliers from representing

(a) that goods have characteristics or uses or benefits which they do not have; (b) that their goods are of a particular quality or grade they are not; and (c) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

159.    Arris's conduct as alleged above constitutes unfair and/or deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02.

160.    By concealing defects in the Modems, Arris engaged in deceptive business practices prohibited by the Ohio CSPA, including: representing that the Modems have characteristics, uses, benefits, and qualities which they do not have; representing that the Modems are of a particular standard, quality, and grade when they are not; representing that the subject of a transaction involving Modems has been supplied in accordance with a previous representation when it has not; and engaging in other unfair or deceptive acts or practices. The suppressed or omitted information would be material to a reasonable consumer.

161.    Arris's actions occurred in the conduct of trade or commerce.

162.    In the course of its business, Arris concealed the defects in the Modems and otherwise engaged in activities with a tendency or capacity to deceive. Arris engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Modems.

163.    Arris knew about the Modems's defects at the time of sale. Arris acquired additional information concerning the defects after the Modems were sold, but concealed all of that information until it was revealed by Modem purchasers. By failing to disclose and by actively concealing the defects in the Modems, Arris engaged in unfair and deceptive business practices in violation of the Ohio CSPA.

164.    By failing to disclose and by actively concealing the defects in the Modems, which it marketed as reliable and of high quality, Arris engaged in unfair and deceptive business practices in violation of the Ohio CSPA.

165.    Arris's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability of their Modems. Arris

intentionally and knowingly misrepresented material facts regarding the Modems with the intent to mislead Plaintiffs and the Ohio Class.

166.    Arris knew or should have known that its conduct violated the Ohio CSPA.

167.    As alleged above, Arris made material statements about the reliability of the Modems that were either false or misleading. Arris owed Plaintiffs and the Ohio Class a duty to disclose the true safety and reliability of the Modems, because Arris: (a) possessed exclusive knowledge about the defects in the Modems; (b) intentionally concealed the foregoing from Plaintiff; and (c) made incomplete representations about the reliability of the Modems, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

168.    Because Arris fraudulently concealed the defects in the Modems, purchasers of the Modems were deprived of the benefit of their bargain since the cable modems they purchased were worth less than they would have been if they were free from defects. Furthermore, Plaintiffs and the Ohio Class had to spend their time and money to resolve their problems with the Modems. Had purchasers of the Modem been aware of the defects in their cable modems, they would have either not have bought the Modems or would have paid less for them.

169.    As a direct and proximate result of Arris's violations of the Ohio CSPA, Plaintiffs and the Ohio Class have suffered injury-in-fact and/or actual damage, as alleged above. As a result of the foregoing wrongful conduct of Arris, Plaintiffs and the Ohio Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Arris's deceptive and unfair conduct, treble damages, court costs and reasonable attorneys' fees, pursuant to OHIO REV. CODE § 1345.09, et seq.

**Eighth Claim for Relief**

**Unfair and Deceptive Acts in Violation of Hawaii Law**

**Haw. Rev. Stat. § 480 *et seq.***

170.    Plaintiff Romeo, individually and on behalf of the Hawaii Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

171. Plaintiff Romeo brings this claim individually and on behalf of the Hawaii Class against Defendant.

172. Plaintiff and the Hawaii Class purchased the SB6190 Modem manufactured by Defendant that was marketed for fast and reliable Internet connectivity.

173. Plaintiff and the Hawaii Class purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

174. Arris is a "person" under HAW. REV. STAT. § 480-1. Plaintiff and the Hawaii Class are "consumer[s]" as defined by HAW. REV. STAT. § 480-1, who purchased a Modem.

175. Arris's acts or practices as set forth above occurred in the conduct of trade or commerce. The Hawaii Act § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...."

176. In the course of its business, Arris concealed the defects in the Modems and otherwise engaged in activities with a tendency or capacity to deceive. Arris also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Modems.

177. Arris knew about the Modems's defects at the time of sale. Arris acquired additional information concerning the defects after the Modems were sold, but concealed all of that information until it was revealed by Modem purchasers. By failing to disclose and by actively concealing the defects in the Modems, Arris engaged in unfair and deceptive business practices in violation of the Hawaii Act.

178. By failing to disclose and by actively concealing the defects in the Modems, which it marketed as reliable and of high quality, Arris engaged in unfair and deceptive business practices in violation of the Hawaii Act. Arris's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true reliability of their Modems.

179.    Arris intentionally and knowingly misrepresented material facts regarding the Modems with the intent to mislead Plaintiff and the Hawaii Class. Arris knew or should have known that its conduct violated the Hawaii Act.

180.    As alleged above, Arris made material statements about the reliability of the Modems that were either false or misleading. Arris owed Plaintiff a duty to disclose the true safety and reliability of the Modems, because Arris: (a) possessed exclusive knowledge about the defects in the Modems; (b) intentionally concealed the foregoing from Plaintiff; and (c) made incomplete representations about the reliability of the Modems, while purposefully withholding material facts from Plaintiff that contradicted these representations.

181.    Because Arris fraudulently concealed the defects in the Modems, purchasers of the Modems were deprived of the benefit of their bargain since the cable modems they purchased were worth less than they would have been if they were free from defects. Furthermore, Plaintiff and the Hawaii Class had to spend their time and money to resolve their problems with Modems. Had  purchasers of the Modem been aware of the defects in their cable modems, they would have either not have bought the Modems or would have paid less for them.

182.    As a direct and proximate result of Arris's violations of the Hawaii Act, Plaintiff and the Hawaii Class have suffered injury-in-fact and/or actual damage as alleged above. Pursuant to HAW. REV. STAT. § 480-13, Plaintiff seeks monetary relief against Arris measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

### Ninth Claim for Relief

### Violation of Oklahoma Consumer Protection Act

### Okla. Stat. Tit. 15 § 751 *et seq.*

183.    Plaintiff Matsayko, individually and on behalf of the Oklahoma Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

184. Plaintiff Matsayko brings this claim individually and on behalf of the Oklahoma Class against Defendant.

185. Plaintiff and the Oklahoma Class purchased the SB6190 Modem manufactured by Defendant that was marketed for fast and reliable Internet connectivity.

186. Plaintiff and the Oklahoma Class purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

187. Plaintiff and the Oklahoma Class are "persons" under the Oklahoma Consumer Protection Act ("CPA"), OKLA. STAT. TIT. 15 § 752. Arris is a "person," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15 § 15-751(1).

188. The sales of the defective Modems to Plaintiff and the Oklahoma Class were "consumer transactions" within the meaning of OKLA. STAT. TIT. 15 § 752, and Arris's actions as set forth herein occurred in the conduct of trade or commerce.

189. The Oklahoma CPA declares unlawful, inter alia, the following acts or practices when committed in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics..., uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." See OKLA. STAT. TIT. 15, § 753.

190. In the course of its business, Arris concealed the defects in the Modems and otherwise engaged in activities with a tendency or capacity to deceive. Arris also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Modems.

191. Arris knew about the Modems's defects at the time of sale. Arris acquired additional information concerning the defects after the Modems were sold, but concealed all of

that information until it was revealed by Modem purchasers. By failing to disclose and by actively concealing the defects in the Modems, Arris engaged in unfair and deceptive business practices in violation of the Oklahoma CPA.

192. By failing to disclose and by actively concealing the defects in the Modems, which it marketed as reliable and of high quality, Arris engaged in unfair and deceptive business practices in violation of the Oklahoma CPA. Arris's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Oklahoma Class, about the true reliability of their Modems.

193. Arris intentionally and knowingly misrepresented material facts regarding the Modems with the intent to mislead Plaintiff and the Oklahoma Class. Arris knew or should have known that its conduct violated the Oklahoma CPA.

194. As alleged above, Arris made material statements about the reliability of the Modems that were either false or misleading. Arris owed Plaintiff a duty to disclose the true safety and reliability of the Modems, because Arris: (a) possessed exclusive knowledge about the defects in the Modems; (b) intentionally concealed the foregoing from Plaintiff; and (c) made incomplete representations about the reliability of the Modems, while purposefully withholding material facts from Plaintiff that contradicted these representations.

195. Because Arris fraudulently concealed the defects in the Modems, purchasers of the Modems were deprived of the benefit of their bargain since the cable modems they purchased were worth less than they would have been if they were free from defects. Furthermore, Plaintiff and the Oklahoma Class had to spend their time and money to resolve their problems with the Modems. Had purchasers of the Modem been aware of the defects in their cable modems, they would have either not have bought the Modems or would have paid less for them.

196. As a direct and proximate result of Arris's violations of the Oklahoma CPA, Plaintiff and the Oklahoma Class have suffered injury-in-fact and/or actual damage as alleged above. Plaintiff further seeks an order enjoining Arris's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA and OKLA. STAT. TIT. 15 § 15-761.1.

**Tenth Claim for Relief**

**Violation of Consumer Protection Procedures Act**

**D.C. Code § 28-3901 *et seq.***

197.     Plaintiff Eisen, individually and on behalf of the D.C. Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

198.     Plaintiff Eisen brings this claim individually and on behalf of the D.C. Class against Defendant.

199.     Plaintiff and the D.C. Class purchased the SB6190 Modem manufactured by Defendant that was marketed for fast and reliable Internet connectivity.

200.     Plaintiff and the D.C. Class purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

201.     Arris is a "person" under the Consumer Protection Procedures Act ("CPPA"), D.C. CODE § 28-3901(a)(1).

202.     Plaintiff and the D.C. Class are "consumers," as defined by D.C. CODE § 28-3901(1)(2), who purchased Modems.

203.     Arris's actions as set forth herein constitute "trade practices" under D.C. CODE § 28-3901.

204.     Arris participated in unfair or deceptive acts or practices that violated the D.C. CPPA. By systematically concealing the defects in the Modems, Arris engaged in unfair or deceptive practices prohibited by the D.C. CPPA, D.C. CODE § 28-3901, et seq.,

205.     In the course of its business, Arris concealed the defects in the Modems and otherwise engaged in activities with a tendency or capacity to deceive. Arris also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Modems.

206.     Arris knew about the Modems's defects at the time of sale. Arris acquired additional information concerning the defects after the Modems were sold, but concealed all of that information until it was revealed by Modem purchasers. By failing to disclose and by actively concealing the defects in the Modems, Arris engaged in unfair and deceptive business practices in violation of the D.C. CPPA.

207.     By failing to disclose and by actively concealing the defects in the Modems, which it marketed as reliable and of high quality, Arris engaged in unfair and deceptive business practices in violation of the D.C. CPPA. Arris's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the D.C. Class, about the true reliability of their Modems.

208.     Arris intentionally and knowingly misrepresented material facts regarding the Modems with the intent to mislead Plaintiff and the D.C. Class. Arris knew or should have known that its conduct violated the D.C. CPPA.

209.     As alleged above, Arris made material statements about the reliability of the Modems that were either false or misleading. Arris owed Plaintiff a duty to disclose the true safety and reliability of the Modems, because Arris: (a) possessed exclusive knowledge about the defects in the Modems; (b) intentionally concealed the foregoing from Plaintiff; and (c) made incomplete representations about the reliability of the Modems, while purposefully withholding material facts from Plaintiff that contradicted these representations.

210.     Because Arris fraudulently concealed the defects in the Modems, purchasers of the Modems were deprived of the benefit of their bargain since the cable modems they purchased were worth less than they would have been if they were free from defects. Furthermore, Plaintiff and the D.C. Class had to spend their time and money to resolve their problems with the Modems. Had  purchasers of the Modem been aware of the defects in their cable modems, they would have either not have bought the Modems or would have paid less for them.

211.     Plaintiff is entitled to recover treble damages or $1,500, whichever is greater, reasonable attorneys' fees, and any other relief the Court deems proper, under D.C. CODE § 28-3901.

**Eleventh Claim for Relief**

**Violations of the Kansas Consumer Protection Act**

**Kan. Stat. Ann. § 50-623 *et seq.***

212.     Plaintiff Tilley, individually and on behalf of the Kansas Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

213.     Plaintiff Tilley brings this claim individually and on behalf of the Kansas Class against Defendant.

214.     Plaintiff and the Kansas Class purchased the SB6190 Modem manufactured by Defendant that was marketed for fast and reliable Internet connectivity.

215.     Plaintiff and the Kansas Class purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

216.     Arris is a "supplier" under the Kansas Consumer Protection Act ("CPA"), KAN. STAT. ANN. § 50-624(l).

217.     Plaintiff and the Kansas Class are "consumers," within the meaning of KAN. STAT. ANN. § 50-624(b), who purchased Modems.

218.     The sales of the Modems to Plaintiff and the Kansas Class were a "consumer transactions" within the meaning of KAN. STAT. ANN. § 50-624(c).

219.     The CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," KAN. STAT. ANN. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;""(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The CPA

also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." KAN. STAT. ANN. § 50-627(a).

220. In the course of its business, Arris concealed the defects in the Modems and otherwise engaged in activities with a tendency or capacity to deceive. Arris also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Modems.

221. Arris knew about the Modems's defects at the time of sale. Arris acquired additional information concerning the defects after the Modems were sold, but concealed all of that information until it was revealed by Modem purchasers. By failing to disclose and by actively concealing the defects in the Modems, Arris engaged in unfair and deceptive business practices in violation of the Kansas CPA.

222. By failing to disclose and by actively concealing the defects in the Modems, which it marketed as reliable and of high quality, Arris engaged in unfair and deceptive business practices in violation of the Kansas CPA. Arris's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Kansas Class, about the true reliability of their Modems.

223. Arris intentionally and knowingly misrepresented material facts regarding the Modems with the intent to mislead Plaintiff and the Kansas Class. Arris knew or should have known that its conduct violated the Kansas CPA.

224. As alleged above, Arris made material statements about the reliability of the Modems that were either false or misleading. Arris owed Plaintiff a duty to disclose the true safety and reliability of the Modems, because Arris: (a) possessed exclusive knowledge about the defects in the Modems; (b) intentionally concealed the foregoing from Plaintiff; and (c) made incomplete representations about the reliability of the Modems, while purposefully withholding material facts from Plaintiff that contradicted these representations.

225.    Because Arris fraudulently concealed the defects in the Modems, purchasers of the Modems were deprived of the benefit of their bargain since the cable modems they purchased were worth less than they would have been if they were free from defects. Furthermore, Plaintiff and the Kansas Class had to spend their time and money to resolve their problems with the Modems. Had  purchasers of the Modem been aware of the defects in their cable modems, they would have either not have bought the Modems or would have paid less for them.

226.    Pursuant to KAN. STAT. ANN. § 50-634, Plaintiff seeks monetary relief against Arris measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for Plaintiff and each Class member.

227.    Plaintiff also seeks an order enjoining Arris's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under KAN. STAT. ANN § 50-623, et seq.

## Twelfth Claim for Relief

### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act

### 815 ILCS 505/1 and 720 ILCS 295/1A

228.    Plaintiffs Prowant and Fernandez, individually and on behalf of the Illinois Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

229.    Plaintiffs Prowant and Fernandez bring this claim individually and on behalf of the Illinois Class against Defendant.

230.    Plaintiffs and the Illinois Class purchased the SB6190 Modem manufactured by Defendant that was marketed for fast and reliable Internet connectivity.

231.    Plaintiffs and the Illinois Class purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

232.    Arris is a "person" as that term is defined in 815 ILCS 505/1(c).

233.    Plaintiffs are "consumers" as that term is defined in 815 ILCS 505/1(e).

234. The Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of trade or commerce ... whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

235. In the course of its business, Arris concealed the defects in the Modems and otherwise engaged in activities with a tendency or capacity to deceive. Arris also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Modems.

236. Arris knew about the Modems's defects at the time of sale. Arris acquired additional information concerning the defects after the Modems were sold, but concealed all of that information until it was revealed by Modem purchasers. By failing to disclose and by actively concealing the defects in the Modems, Arris engaged in unfair and deceptive business practices in violation of the Illinois CFA.

237. By failing to disclose and by actively concealing the defects in the Modems, which it marketed as reliable and of high quality, Arris engaged in unfair and deceptive business practices in violation of the Illinois CFA. Arris's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Illinois Class, about the true reliability of their Modems.

238. Arris intentionally and knowingly misrepresented material facts regarding the Modems with the intent to mislead Plaintiffs and the Illinois Class. Arris knew or should have known that its conduct violated the Illinois CFA.

239. As alleged above, Arris made material statements about the reliability of the Modems that were either false or misleading. Arris owed Plaintiffs a duty to disclose the true

safety and reliability of the Modems, because Arris: (a) possessed exclusive knowledge about the defects in the Modems; (b) intentionally concealed the foregoing from Plaintiffs; and (c) made incomplete representations about the reliability of the Modems, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

240. Because Arris fraudulently concealed the defects in the Modems, purchasers of the Modems were deprived of the benefit of their bargain since the cable modems they purchased were worth less than they would have been if they were free from defects. Furthermore, Plaintiffs and the Illinois Class had to spend their time and money to resolve their problems with the Modems. Had purchasers of the Modem been aware of the defects in their cable modems, they would have either not have bought the Modems or would have paid less for them.

241. Pursuant to 815 ILCS 505/10a(a), Plaintiffs seek monetary relief against Arris in the amount of actual damages, as well as punitive damages because Arris acted with fraud and/or malice and/or was grossly negligent.

242. Plaintiffs also seek an order enjoining Arris's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 et seq.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the Classes, request that the Court order the following relief and enter judgment against Defendant as follows:

A. An order certifying the proposed Classes and Subclass under Rule 23;

B. An order appointing Plaintiffs and their counsel to represent the Classes and Subclass;

C. A declaration that Defendant has engaged in the illegal conduct alleged;

D. An order that Defendant be permanently enjoined from its improper conduct;

E. A judgment awarding Plaintiffs and the Classes restitution and disgorgement of all compensation obtained by Defendant from its wrongful conduct;

F.     A judgment awarding Plaintiffs and the Classes compensatory damages pursuant

in an amount to be proven at trial;

G.     Prejudgment and postjudgment interest at the maximum allowable rate;

H.     Attorneys' fees and expenses and the costs of this action; and

I.     All other relief that the Court deems necessary, just, and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.


Dated: May 11, 2017                    By:     /s/ Noah M. Schubert
                                                ROBERT C. SCHUBERT (S.B.N. 62684)
                                                WILLEM F. JONCKHEER (S.B.N. 178748)
                                                NOAH M. SCHUBERT (S.B.N. 278696)
                                                SCHUBERT JONCKHEER & KOLBE LLP
                                                Three Embarcadero Center, Suite 1650
                                                San Francisco, CA 94111
                                                Telephone:     (415) 788-4220
                                                Facsimile:     (415) 788-0161
                                                rschubert@sjk.law
                                                wjonckheer@sjk.law
                                                nschubert@sjk.law

                                                *Counsel for Plaintiff*